1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8

STEVEN LEE SHIPMAN,

Plaintiff,

9

v.

10
11

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

12

Defendant.

13

Case No. C17-6042 RSL

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

14        Plaintiff, Steven Lee Shipman, appeals the final decision of the Commissioner of

15   the Social Security Administration ("Commissioner"), which denied his application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the

17   "Act"), 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge

18   ("ALJ").  For the reasons set forth below the Commissioner's decision is AFFIRMED.

19              I.        FACTS AND PROCEDURAL HISTORY

20        Plaintiff is currently 51 years old, has a high school education, and has worked as

21   a lot attendant.  Administrative Record ("AR") at 492.  Plaintiff protectively filed an

22   application for SSI on March 9, 2012, alleging disability as of December 31, 2000.  AR at

23

60, 87. Plaintiff asserted he was disabled due to HIV, back pain, fibromyalgia, hepatitis C, depression and hypertension. AR at 60.

The Commissioner denied plaintiff's claims initially and on reconsideration. AR at 89, 95. Plaintiff requested a hearing, which took place on March 11, 2014. AR at 29. On June 4, 2014, the ALJ issued a decision finding that plaintiff was not disabled based on her finding that plaintiff could perform work available in significant numbers in the national economy. AR at 16-24. Plaintiff's request for review by the Appeals Council was denied on December 29, 2015. AR at 1. On February 22, 2016, plaintiff filed an action in this district challenging the Commissioner's decision. AR at 577. On July 28, 2016, based on the stipulation of the parties, United States District Judge Robert J. Bryan reversed the Commissioner's decision and remanded the case to the Commissioner for a *de novo* hearing pursuant to sentence four of 42 U.S.C. § 405(g). AR at 580-81. The Appeals Council vacated the Commissioner's decision and remanded it to the ALJ. AR at 549-50.

The ALJ held a new hearing on March 7, 2017. AR at 513. On August 30, 2017, the ALJ issued a decision finding plaintiff disabled but finding that plaintiff's substance use disorder was a contributing factor because plaintiff would not be disabled if he stopped the substance use, and therefore plaintiff was not disabled within the meaning of the Act. AR at 506. Because plaintiff did not ask the Appeals Council for review and the Council did not assume jurisdiction, the ALJ's ruling became the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 13, 2017,

plaintiff filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

## III.    EVALUATING DISABILITY

As the claimant, plaintiff bears the burden of proving that he is disabled within the meaning of the Act.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months or is expected to end in death.  42 U.S.C.

§ 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. § 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  See 20 C.F.R. § 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  Id.  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  Id.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  If the claimant does not have such impairments, she is not disabled.  Id.  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. § 416.920(d).  A claimant whose impairment meets or equals one

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R. § 416.972.

of the listings for the required 12-month duration is disabled.  Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. § 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.920(g); Tackett, 180 F.3d at 1099-1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

If the Commissioner finds the claimant is disabled and there is medical evidence of a substance use disorder, the Commissioner must determine if the substance use disorder is a contributing factor material to the determination of disability.  In making this determination, the Commissioner must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability, and the claimant is not disabled.  20 C.F.R. § 416.935.

IV.    DECISION BELOW

On August 30, 2017, the ALJ issued a decision finding the following:

1.     The claimant has not engaged in substantial gainful activity since March 9, 2012, the application date (20 C.F.R. § 416.971 *et seq.*).

2.     The claimant has the following severe impairments: degenerative disc disease, left lateral epicondylitis, status post excision of right radial head for capitellar arthritis, HIV, depression, anxiety, and alcohol abuse (20 C.F.R. § 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926).

4.     Based on all of the impairments, including the substance use disorder, the claimant has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except he can lift and carry 10 pounds frequently and 20 pounds occasionally; can stand and walk for at least six hours in an eight-hour workday and can sit for at least six hours in an eight-hour workday but would need to alternate sitting and standing (*i.e.*, can sit for an hour and then stand for five to ten minutes or could stand for an hour and then sit for five to ten minutes) without needing to leave the workstation.  He can occasionally balance, stoop, kneel, crouch, and crawl.  He can occasionally perform overhead reaching bilaterally and can frequently handle and finger bilaterally.  He should avoid exposure to excessive vibration, hazards such as unprotected heights, and dangerous machinery.  He can understand, remember, and carry out tasks or instructions consistent with occupations with a specific vocational preparation (SVP) level of 1 or 2.  He can have occasional, superficial incidental contact with the public and can work in proximity to coworkers but should not perform tasks that require teamwork.  The claimant would need to take frequent unscheduled breaks such that he would miss 16 hours of work per month.

5.     The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

6.     Considering the claimant's age, education, and work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R.

§§ 416.960(c) and 416.966).

7.     If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

8.     If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).

9.     If the claimant stopped the substance use, the claimant would have the same RFC, except that he would not need to take frequent unscheduled breaks such that he would miss 16 hours of work per month.

10.    If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work (20 C.F.R. § 416.965).

11.    If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 C.F.R. §§ 416.920(c) and 416.966).

12.    The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 C.F.R. §§ 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled, as defined in the Act, from the application date through the date of the ALJ's decision.

AR at 489-506.

## V.     ISSUES ON APPEAL

The issues on appeal are:

A.     Whether the ALJ erred in rejecting plaintiff's testimony.

B.      Whether the ALJ erred in rejecting the opinions of Erum Khaleeq, M.D.

C.      Whether the ALJ erred in rejecting the opinions of Wendy Hartinger,
        Psy.D., and Renee Eisenhauer, Ph.D.

D.      Whether the ALJ erred in rejecting the opinions of Alysa A. Ruddell,
        Ph.D., and Aaron Burdge, Ph.D.

E.      Whether the ALJ erred in rejecting the testimony of lay witness Dennise
        Grochow.

Dkt. 10 at 1.

## VI.    DISCUSSION

### A. Plaintiff's Testimony

Plaintiff argues that the ALJ erred in rejecting his testimony on the severity of his

symptoms.  See Dkt. 10 at 15.

If the claimant has presented objective medical evidence of an impairment that

could reasonably be expected to produce the pain or other symptoms alleged, and there is

no evidence of malingering, the ALJ may only reject the claimant's testimony "'by

offering specific, clear and convincing reasons for doing so.  This is not an easy

requirement to meet.'"  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting

Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  In evaluating the ALJ's

determination at this step, the court may not substitute its judgment for that of the ALJ.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is

supported by substantial evidence, it should stand, even if some of the ALJ's reasons for

discrediting a claimant's testimony fail.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's decision to discredit the claimant's testimony should be upheld if the ALJ provided valid reasons supported by the record even if the ALJ also provided one or more invalid reasons).

Here, plaintiff reported he cannot stand, sit, lift or walk much.  AR at 203. Plaintiff testified that he gets anxious around big crowds and sometimes even at home. AR at 528.  Headaches make it difficult to concentrate on a book or movie and caused him to drop out of community college.  AR at 528-29.  He has learned to use his left hand to reinforce his right, because in the past he has dropped glasses when using his right hand only.  AR at 530.  On a scale of one to ten, his pain is always a four and about once a month it goes up to eight or nine.  AR at 531.  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the ALJ discounted the severity of the alleged limitations because the limitations were inconsistent with plaintiff's activities, the medical record showed improvement with minimal treatment, and medical findings reflected generally modest impairments.  AR at 496, 499, 500.

First, an ALJ may use a claimant's activities to form the basis of an adverse credibility determination if they "contradict his other testimony."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  Here, as the ALJ noted, in July 2016 plaintiff reported "filling [his] time riding [his] bike and fishing."  AR at 1050.  The ALJ reasonably inferred that this contradicted plaintiff's March 2017 testimony that he had only ridden

his bike twice, for ten minutes maximum. See AR at 537. Also, in April 2016 plaintiff shared in group therapy that he was "returning to school full time." AR at 1034. At the March 2017 hearing, plaintiff testified that he took three classes, passing two of them, then dropped out the following quarter. AR at 528-29. The ALJ reasonably inferred that this required "an ability to adhere to a schedule and also to be in public settings," at least enough to pass two classes, contradicting plaintiff's allegations of disabling anxiety in large groups. AR at 501. The Court concludes the ALJ reasonably discounted plaintiff's testimony because it was contradicted by his activities.

Other activities the ALJ cited did not, however, contradict plaintiff's alleged limitations. Plaintiff once reported "caretaking his Dad due to his heart condition" but there is no evidence on what tasks this caretaking entailed. AR at 1059. Plaintiff said "he would be willing to take a job if it would not make him too fatigued." AR at 329. The statement is so conditional that it is virtually meaningless. Plaintiff told a treatment provider in January 2014 that he was "going to start a new job in a convenience store soon." AR at 378. The record reflects a brief, unsuccessful work attempt in 2014 that ended due to plaintiff's pain. AR at 519-20. The ALJ points to a substance abuse treatment discharge plan requiring plaintiff to seek employment, but the plan does not purport to consider plaintiff's pain or other impairments to determine if he is capable of working. AR at 734. Plaintiff testified he walks around a lake that is a quarter or an eighth of a mile around, but this is not inconsistent with his testimony that he can walk for 20 minutes before needing to rest. AR at 1212, 524. The ALJ cited plaintiff's reports

that he volunteered with his church, "went to appointments, had lunch at the Salvation Army, grocery shopped, attended AA, and did chores" but, with no further information, none of those activities are necessarily inconsistent with plaintiff's testimony. AR at 501 (citing AR at 740, 1144). The erroneous inclusion of these examples, however, is harmless. See Molina, 674 F.3d at 1115.

Second, impairments that can be managed effectively are not disabling. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff's anxiety and depression were "stable" on Zoloft, which suggests at least modest improvement. AR at 906. And plaintiff testified that when he feels "really anxious and overwhelmed" he takes Hydroxyzine and ten minutes later he is "okay." AR at 528. Other treatments the ALJ identified were not effective, however. Plaintiff had right elbow surgery in October 2013, but reported continued elbow pain and hand numbness months later. AR at 498 (citing AR at 442, 428). Neck pain and headaches, after unsuccessful treatment with ibuprofen, were treated with sumatriptan but the record does not show whether sumatriptan worked. AR at 479-80, 477-78. Cervical steroid injection reduced neck pain, but the pain gradually returned. AR at 847. Again, inclusion of erroneous examples was harmless error.

Third, an ALJ may discount a claimant's testimony in part due to a lack of supporting objective medical findings. See Rollins v. Massanari, 261 F.3d 853, 857 (9th

Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); see also 20 C.F.R. § 416.929(c)(2). Here, however, several clinicians documented numerous abnormal clinical findings. The ALJ noted that several doctors found normal gait, strength and sensation, but failed to explain why these outweighed their findings of radiculopathy, crepitus, positive straight leg raise test, and abnormalities in range of motion, reflexes and balance. AR at 497, 322. Merely listing the normal and abnormal findings does not explain why the ALJ considered the normal results more significant. See Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The Court concludes the ALJ did not err by discounting plaintiff's symptom testimony. The inclusion of erroneous reasons was harmless error because the ALJ provided the clear and convincing reasons, supported by substantial evidence, that plaintiff's activities contradicted his alleged limitations and that his mental impairments were effectively treated with medication. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where an ALJ provides at least one valid reason supported by substantial evidence to discount a claimant's credibility, inclusion of other erroneous reasons is harmless).

**B. Medical Opinion Evidence**

Plaintiff argues the ALJ erred by discounting the opinions of examining doctors Erum Khaleeq, M.D., Wendy Hartinger, Psy.D., and Alysa A. Ruddell, Ph.D., and nonexamining doctors Renee Eisenhauer, Ph.D., and Aaron Burdge, Ph.D. Dkt. 10 at 1. The ALJ is responsible for resolving any conflicts or ambiguities in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, the ALJ's conclusion must be upheld as long as it is supported by substantial evidence. Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

An ALJ may only reject the contradicted opinion of an examining doctor based on specific and legitimate reasons that are supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996)).

1.    Erum Khaleeq, M.D.

Dr. Khaleeq performed a psychological examination of plaintiff on May 26, 2012. AR at 324. Dr. Khaleeq diagnosed plaintiff with "[d]epression due to general medical condition." AR at 326. She opined that he "may not be able to interact with supervisors or the public," "may have difficulty maintaining regular attendance in the workplace,"

"could not perform work activities on a consistent basis," and "may have difficulty performing repetitive and complex tasking…." AR at 327. She further opined that the "[u]sual stress encountered in the workplace would further aggravate his psychiatric condition." AR at 327. The ALJ gave Dr. Khaleeq's opinions "little weight" because they were based primarily on plaintiff's self-reports, which the ALJ found were inconsistent with "modest mental status examination findings and improvements with minimal treatment"; and because the opinions were inconsistent with plaintiff's activities and appropriate interpersonal interactions. AR at 503.

### a)      Based on Self-Reports

An ALJ may discount a treating provider's opinion if it is "based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). Psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." Id. at 1049 (internal quotation marks omitted) (quoting Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987)).

As discussed above, the ALJ reasonably discounted plaintiff's self-reports of symptom severity. And the ALJ reasonably concluded Dr. Khaleeq's opinions were based largely on plaintiff's self-reports. For example, her opinion that plaintiff may have

difficulty maintaining attendance was expressly premised on plaintiff's self-report that "he spends most of his time laying around watching television or sleeping" and does not address whether plaintiff does so by choice or is capable of more. AR at 327 ("He may have difficulty maintaining regular attendance in the workplace, as he spends most of his time laying around watching television or sleeping away."). Dr. Khaleeq's opinion that plaintiff may not be able to interact with supervisors was based on his self-report that he tried to work about two years prior but it only lasted for a day. Id. ("He may not be able to interact with supervisors or the public, as he tried to work which lasted for a day about two years ago."). The Court concludes the ALJ properly discounted Dr. Khaleeq's opinions as based largely on plaintiff's properly discredited self-reports.

b) Plaintiff's Activities

A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the treating physician's opinion. See, e.g., Rollins, 261 F.3d at 856 (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); Morgan, 169 F.3d at 601-02 (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's activities).

As the ALJ noted, plaintiff reportedly "demonstrated pro-social leadership skills as a mentor for new clients coming into [substance abuse] treatment." AR at 724, AR 501. As discussed above, plaintiff also attended community college full time for at least one quarter. AR at 1034. The ability to adhere to a schedule, to be in public settings, and

to mentor unfamiliar people was inconsistent with Dr. Khaleeq's assessment that plaintiff may have difficulty maintaining regular attendance and may not be able to interact with supervisors or the public. AR at 327. Inconsistency with plaintiff's activities was another specific and legitimate reason the ALJ provided to discount Dr. Khaleeq's opinions.

The Court concludes the ALJ did not err by discounting Dr. Khaleeq's opinions.

2.    Wendy Hartinger, Psy.D., and Renee Eisenhauer, Ph.D.

Dr. Hartinger conducted a psychological examination on November 18, 2016. AR at 768. Dr. Eisenhauer reviewed her evaluation and concurred with her diagnoses and opinions in a report dated December 14, 2016. AR at 773. Dr. Hartinger diagnosed plaintiff with generalized anxiety disorder, persistent depressive disorder, alcohol use disorder in remission by self-report, and methamphetamine use disorder in full sustained remission. AR at 770. She opined that he had marked limitations in his ability to maintain punctual attendance, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR at 770-71. The ALJ gave Dr. Hartinger's and Dr. Eisenhauer's opinions "little weight" because they were unsupported by and inconsistent with the medical evidence, based largely on plaintiff's discredited self-reports, and inconsistent with plaintiff's activities. AR at 504.

Like inconsistency with a claimant's activities, inconsistency with the medical record or a doctor's own findings is a specific and legitimate reason to reject a medical

opinion.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tommasetti, 533 F.3d at 1041.  Here, the ALJ properly discounted the opinions as inconsistent with the medical evidence and with plaintiff's activities.  Dr. Hartinger's own mental status examination results were entirely normal except for anxious mood and deficits in fund of knowledge and concentration tasks.  AR at 772.  Other examiners found minimal deficits as well.  For example, in a January 2014 psychological evaluation by Charles Quinci, Ph.D., all results on the mental status examination were entirely within normal limits.  AR at 476.  With regard to activities, Dr. Hartinger noted plaintiff "cannot focus on what he is doing when others are around [and] feels nervous around others," which is inconsistent with plaintiff's regular attendance at addiction group meetings, church and school, volunteering with his church, and Dr. Hartinger's own description of plaintiff as friendly and cooperative.  AR at 770, 504, 772.

The ALJ improperly discounted the opinions as based on plaintiff's self-report, however.  Although psychiatric evaluations depend in part on self-report, clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'"  Buck, 869 F.3d at 1049.  Dr. Hartinger performed a professional clinical interview and mental status examination.  "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."  Ghanim, 763 F.3d at 1162.

Inclusion of an erroneous reason was harmless error because the ALJ provided the specific and legitimate reasons that the opinions were inconsistent with the medical

record and inconsistent with plaintiff's activities.  See Molina, 674 F.3d at 1115 (error is harmless if inconsequential to the ultimate nondisability determination).  The Court concludes the ALJ did not err by discounting the opinions of Dr. Hartinger and Dr. Eisenhauer.

### 3.    Alysa A. Ruddell, Ph.D. and Aaron Burdge, Ph.D.

Dr. Ruddell performed a psychological assessment on December 16, 2015.  AR at 739.  Dr. Burdge reviewed her evaluation and concurred with Dr. Ruddell's opinions in a report dated January 20, 2016.  AR at 754.  Dr. Ruddell diagnosed plaintiff with anxiety disorder and opined that he would have marked limitations in his ability to adapt to changes in a routine work setting, complete a normal workday and workweek without interruptions from psychologically based symptoms, and set realistic goals and plan independently.  AR at 740-41.

The ALJ gave little weight to Dr. Ruddell's and Dr. Burdge's opinions because the opinions are inconsistent with the largely-unremarkable findings by Dr. Ruddell and in the overall medical record, and inconsistent with plaintiff's activities.  AR at 504.  Inconsistency with the medical record was a specific and legitimate reason to discount the opinions.  As discussed above, multiple psychological evaluations resulted in largely normal clinical findings.  Dr. Hartinger's testing revealed only minor abnormalities, and Dr. Quinci's testing showed no abnormal results.

However, the ALJ's conclusions that the opinions were inconsistent with plaintiff's activities and with Dr. Ruddell's findings are not supported by substantial

evidence. Dr. Ruddell's mental status examination results showed normal appearance, motor and psychomotor activity, attitude, social behavior, orientation, insight and fund of knowledge, but anxious mood, paranoid thought content, and impairments in recent memory, concentration tasks, abstract thinking, and problem solving. AR at 742. The ALJ described these results as "largely unremarkable aside from some impairment in memory" and did not explain why the normal results outweighed the normal ones. AR at 504.

The only activity the ALJ specifically noted as inconsistent with the opinions was "complying with the terms of his probation such as attending daily meetings and treatment," yet the ALJ cited no support in the record. AR at 504. Plaintiff's "aftercare plan" after completing substance abuse treatment required three support group meetings per week and the record does not show whether plaintiff met this requirement. AR at 733. The ALJ's finding is thus not supported by substantial evidence. Regardless, the inclusion of erroneous reasons is harmless because inconsistency with the overall medical record was a specific, legitimate reason to discount these opinions. See Molina, 674 F.3d at 1115.

The Court concludes the ALJ did not err by discounting the opinions of Dr. Ruddell and Dr. Burdge.

**C. Lay Witness Testimony**

Plaintiff's friend Dennise Grochow wrote in a statement dated March 5, 2017, that plaintiff has difficulty walking for more than 10-15 minutes, sitting, turning his head,

sleeping, lifting, and riding in a car.  AR at 715-16.

In order to discount competent lay witness testimony, the ALJ must give "germane" reasons supported by substantial evidence.  <u>Bayliss</u>, 427 F.3d at 1218.  Here, the ALJ accepted some of Ms. Grochow's testimony but discounted the extent of it because her statement was inconsistent with medical evidence and because she relied primarily on plaintiff's discredited self-reports.  AR at 505.  The ALJ provided at least one germane reason, namely that some of Ms. Grochow's statements appeared to be based primarily on plaintiff's self-reports.  For example, she stated his sleep is fitful, but there is no indication that she observed his sleep.  AR at 715.  She said that he lifts no more than 25 pounds, but she must have relied on his self-report unless she was with him at all times.  AR at 715.

Inconsistency with the medical record, however, was not a germane reason here.  The ALJ stated that the medical record "does not contain objective findings that would support the extent of the walking, standing, and sitting limitations [Ms. Grochow] notes."  AR at 505.  Lay witness testimony may be rejected if contradicted by medical or other evidence, but it may not be rejected on the grounds that it lacks support from medical evidence.  <u>Diedrich v. Berryhill</u>, 874 F.3d 634, 640 (9th Cir. 2017); <u>Bayliss</u>, 427 F.3d at 1218.  The ALJ cited only a lack of supporting medical evidence, which was not a germane reason to discount Ms. Grochow's testimony.  "The fact that lay testimony … may offer a different perspective than medical records alone is precisely why such evidence is valuable" in a disability determination.  <u>Diedrich</u>, 874 F.3d at 640.

1    The inclusion of an erroneous reason was harmless error, and the Court concludes

2    the ALJ did not err by discounting Ms. Grochow's testimony.

3                          VII.    CONCLUSION

4         For the foregoing reasons, the decision of the Commissioner is AFFIRMED.  The

5    Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

6         DATED this 6ᵗʰ day of August, 2018.

7

8

9                                    Robert S. Lasnik
                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23